# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

COLETTE CAVINS,

        **Plaintiff,**

                                            **Case No. 1:10-CV-0261**

**v.**                                        **JUDGE SMITH**

                                            **Magistrate Judge Deavers**

DOLGENCORP, INC., *et al.*,

        **Defendants.**

## OPINION AND ORDER

Plaintiff Colette Cavins initiated this case against Defendants Dolgencorp, Inc., Dollar General Partners, Dolgencorp of New York, Inc., and Dolgencorp of Texas, Inc.[1] for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA").  This matter is currently before the Court for consideration of Defendant's Motion for Summary Judgment (Doc. 33) and Defendant's Motion to Strike and Objections of evidence offered by Plaintiff in opposition to Defendant's Motion for Summary Judgment (Doc. 48).  Plaintiff has responded to each of the motions and they are now ripe for review.  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Strike and **GRANTS** Defendant's Motion for Summary Judgment.

---

[1] Dolgencorp, Inc. was Plaintiff's former employer.  Effective October 9, 2008, Dolgencorp, Inc. was converted to a limited liability company and is now Dolgencorp, LLC.  The parties have stipulated that Dolgencorp of New York, Inc., Dolgencorp of Texas, Inc., and Dollar General Partners are no longer Defendants in this action.

## I.  FACTUAL BACKGROUND

Plaintiff Colette Cavins was hired as a Store Manager for Dollar General by District Manager Ken Schneider at Store No. 8206, in West Chester, Ohio, and she held that position from October 2003 to May 2004.  Cavins claims that she worked an average of 65 hours per week.  Cavins earned a fixed weekly salary of $700, which was more than twice the weekly amount earned by the next highest paid employee in her store.  Cavins' Assistant Store Manager ("ASM") was the second highest-paid employee, earning $7.00 per hour and usually working up to, but no more than 40 hours per week.  Cavins earned more than double what her ASM earned on a weekly basis, and was the only employee in her store to be paid a bonus.  Cavins was eligible to earn bonuses of up to $10,000 based on her store's sales, profitability, shrink level, expenses, and inventory turnover in her store.  During her six months as a Store Manager, Cavins was paid one bonus of $1,250, and another bonus of $250.28.  Cavins had 6 to 10 other employees on her store's payroll at any given time.  The highest bonus an ASM could receive was 30% of the Store Manager's bonus eligibility, and store clerks were not eligible for bonuses.

Defendant Dolgencorp, LLC operates the retail Dollar General stores in Ohio.  Dollar General is a discount retailer of basic consumable goods, including cleaning supplies, health and beauty aids, food/snack, housewares, toys and basic apparel.  As of February 2010, there were 8,877 Dollar General stores.  Dollar General stores are staffed with a Store Manager, who is the highest level supervisory personnel, and the only exempt, salaried employee in the store.  In addition, the stores are ordinarily staffed with an ASM, a Lead Clerk, and multiple store clerks. When Plaintiff was employed as a Store Manager for Dollar General, stores had an average of 7-8 employees and 4-5 were clerks.

2

Store Managers report to a District Manager. During the relevant time period for this case, District Managers oversaw approximately 15 to 25 stores, and were required to have a weekly office day. Dollar General expects that District Managers will visit each store every 4-6 weeks. District Managers typically do not have keys to stores in their districts. Plaintiff Cavins reported directly to her District Manager, who she saw about once a month. Plaintiff never met the Regional Manager.

Store Managers are in charge of their stores, and are expected to implement and enforce Dollar General's Standard Operating Procedures. Store Managers manage and direct employees, oversee all store operations, and are charged with, and ultimately responsible for, the store's operations and profitability. Plaintiff Cavins attended a four-week training program at a Dollar General training center in Columbus, Ohio. She was trained on all aspects of operating a Dollar General store profitably. No other store employee, including the ASMs, received similar training. It was Cavins responsibility as the Store Manager to train her employees.

Plaintiff Cavins regularly performed and/or delegated all managerial duties set forth in the Store Manager job description, which includes: "Recruit, select and retain qualified employees;" "ensure store is properly staffed;" "provide proper training for employees; conduct performance evaluations; identify gaps for appropriate solutions and/or counseling, up to and including termination," "Evaluate operating statements to identify business trends;" "Ensure the financial integrity of the store through strict cashier accountability, key control, and adherence to stated company security practices and cash control procedures;" "complete all paperwork and documentation according to guidelines and deadlines;" "controlling damages, markdowns, scanning, paperwork, and facility controls;" "make recommendations regarding employee pay rate

3

and advancement;" and "communicate performance, conduct and safety expectations." (*See* Ex. 2 to Cavins Dep. at 164:5-11).

Cavins describes that she got a lot of direction from the District Manager. She would get at least five voicemails a day from the district or regional manager. Cavins describes that she lacked the authority to hire a key-carrying employee, to give employees pay raises and promotions, to close the store due to bad weather, and to transfer merchandise in or out of the store. She further asserts that she had no input over the store's hours of operation and any deviations from the planogram (which showed employees where to place items) required district manager approval. Further, the District Manager handled the worker's compensation issues, controlled the store's merchandise stock level and decided what outside vendors to contract with for repairs at the store.

Despite these characterizations by Plaintiff, she admits that her District Manager did not interfere with her responsibility for recruiting, selecting and hiring qualified employees, training, ensuring the store was properly staffed, and preparing employee performance reviews. (Cavins Dep. at 136:14-138:7). Plaintiff ultimately agreed that "Someone has to be in charge. . . no store can function without a manager or someone in charge." (Cavins Dep. at 154:12-155:8).

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*,  570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    DISCUSSION

Plaintiff seeks to recover for unpaid overtime under the Fair Labor Standards Act. Defendant, however, moves for summary judgment on Plaintiff's claim asserting that she was exempt from overtime under the "executive exemption" of the FLSA, 29 U.S.C. § 213(a)(1). Defendant has also filed a Motion to Strike and Objections to evidence offered by Plaintiff in opposition to Defendant's Motion for Summary Judgment.

As a preliminary matter, this Court will first address Defendant's Motion to Strike and Objections. Then, the Court will consider Defendant's Motion for Summary Judgment.

### A.    Defendant's Motion to Strike and Objections

Defendant moves to strike the following exhibits attached to Plaintiff's Response: (1) Documents from a 2004 Dollar General Survey, Exhibits 2, 4, 5, 6 and 7; (2) Dollar General Store Newsletter, Exhibits 8, 9 and 13; (3) Kimberly Baker's Performance Evaluation, Exhibit 10; and (4) October 2005 Selection from the Standard Operating Procedure, Exhibit 20.  Defendant argues that these exhibits fail to satisfy the minimal evidentiary thresholds for admissibility and should not be considered.  Plaintiff, however, argues that these documents are relevant and directly support her argument that her chief duty as a Dollar General store manager was to perform non-managerial duties.

### 1.    2004 Dollar General Survey

Defendant asks the court to strike Plaintiff's Exhibits 2, 4, 5, 6 and 7 from a 2004 Dollar General Survey that was related to the process in which stores were converted to "EZ Stores"–a conversion that resulted in increased efficiencies for each Dollar General store in the process of unloading a truck shipment and getting the product to the sales floor.  As part of this initiative, Dollar General conducted surveys of store-level employees in Texas and Oklahoma to measure how much time was spent within their stores on various tasks.  Defendant is concerned that this survey was unrelated to Plaintiff's store or any other store in Ohio and was not isolated to the position of store manager.  Rather, the survey results reflect how much time a store, as a whole, spent on particular tasks.

Plaintiff argues, and the Court agrees that it is not unusual for a company of this size to rely on limited sampling.  Dollar General did not need to conduct surveys in Ohio to analyze its store conditions.  As for Dollar General's arguments regarding relevance because the survey

7

results do not specifically apply to the store manager, the Court can review the information and determine what, if any, weight the information should be given.

### 2. Dollar General Store Newsletters

Defendant moves to strike Plaintiff's Exhibits 8, 9, and 13 arguing that they are irrelevant and not probative for summary judgment. The newsletters offered by Plaintiff were published before and after Plaintiff's employment with Dollar General. Further, Defendant argues that none of the three articles contain any evidence about what Cavins did individually as a store manager for Dollar General.

Plaintiff, however, argues that the newsletters are relevant because they discuss the importance of the standard operating procedures manual, as well as the importance of the district manager. The Court agrees that the newsletters are relevant. They need not specifically reference Plaintiff, nor be issued during her tenure to be relevant. These newsletters were issued by Dollar General in the regular course of business and were close in time to Plaintiff's tenure with Dollar General. Again, the Court will give them the weight they deserve.

### 3. Kimberly Baker's Performance Evaluation

Defendant moves to strike Plaintiff's Exhibit 10, the January 2001 evaluation of store manager Kimberly Baker. Defendant argues that it lacks the proper foundation, contains inadmissible hearsay, is irrelevant and is likely to cause confusion and unfair prejudice.

Plaintiff counters that she has offered this evaluation to show that "at one time, Dollar General used the exact same form to evaluate store managers as it did to evaluate assistant store managers–hourly employees eligible for overtime pay." (Pl.'s Response at 5).

The Court is concerned that this evaluation is from 2001 and that Plaintiff has attached the evaluation to show that "at one time" Dollar General used the same form to evaluate store managers and assistant store managers. However, Plaintiff does not allege that, at the time she was employed at Dollar General, from October 2003 to May 2004, that the same evaluations were used. Therefore, Defendant's Motion to Strike Kimberly Baker's Performance Evaluation is granted.

### 4.  October 2005 Selection from the Standard Operating Procedures Manual

Defendant moves to strike Plaintiff's Exhibit 20 which is a selection from the Dollar General's Standard Operating Procedures Manual that was effective in 2005-06. The particular page cited by Plaintiff is dated October 2005, over a year after her employment with Dollar General ended. Defendant argues that this document is not relevant because it did not exist during Plaintiff's employment.

Plaintiff argues that the manual is important to illustrate the daily duties that Dollar General requires its stores managers to perform, including scraping gum off the floor. Plaintiff does not represent that this is the same manual that was in effect while she was employed with Dollar General, nor does she state why she is not relying on the manual that was in effect while she was employed with Dollar General. The Dollar General Standard Operating Procedures Manual that did not take effect until after her employment ended is not relevant to this matter and therefore must be stricken. Accordingly, Defendant's Motion to Strike Exhibit 20 is granted.

9

**B.      Defendant's Motion for Summary Judgment**

Plaintiff, in her sole federal cause of action, asserts that Defendant Dollar General violated the FLSA. (*See Compl.*, Doc. 2).[2]  Defendant seeks summary judgment on Plaintiff's FLSA claim. (Doc. 33).

**1.      Fair Labor Standards Act Claim**

Plaintiff seeks to recover for unpaid overtime under the FLSA.  Defendant, however, argues that Plaintiff's claim for unpaid overtime fails because she was exempt from overtime under the "executive exemption" of the FLSA, 29 U.S.C. § 2139(a)(1).  Consequently, the issue for this Court to decide is whether Plaintiff Cavins is properly classified as an executive-employee under the FLSA.  The overtime exemption is an affirmative defense on which the employer has the burden of proof.  *Thomas v. Speedway SuperAmerica*, 506 F.3d 496, 501 (6th Cir. 2007). That burden requires Dollar General  to prove its defense by a preponderance of the evidence.  *Id.* at 502.

The FLSA requires employers to pay covered employees at least the federal minimum wage for all hours worked. *See* 29 U.S.C. § 206.  In addition, overtime must be paid for all hours worked over 40 hours in a given work week.  *See* 29 U.S.C. § 207.  Specifically, the FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is
> engaged in commerce or in the production of goods for commerce, or is employed
> in an enterprise engaged in commerce or in the production of goods for commerce,
> for a workweek longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above specified at a rate

---

[2] There are a total of thirty-two cases with the same Complaint all filed in this Court after transfer to the multi-district case was denied.  This Order only applies to Plaintiff Cavins' claims against Defendant.

not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  Thus an FLSA plaintiff "must prove by a preponderance of evidence that he or she 'performed work for which he or she was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.2d 546, 551 (6th Cir. 1999) (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946)) (brackets omitted).

Defendant argues that it was not required to pay Plaintiff overtime wages because she was exempt under the "executive exemption."  FLSA overtime exemptions are "affirmative defense[s] on which the employer has the burden of proof," *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974), and those exemptions "are to be narrowly construed against the employers seeking to assert them."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Interpretation of the relevant provisions of the FLSA, 29 U.S.C.S. § 201 *et seq.*, is guided by the regulations issued by the Secretary of Labor–the FLSA grants the Secretary of Labor broad authority to define and delimit the scope of the exemption for executive, administrative, and professional employees.[3]  The regulations defining the executive exemption were amended effective August 23, 2004.  *See* 69 Fed. Reg. 22,122 (April 23, 2004).  Plaintiff was employed with Dollar General from October 2003 to May 2004; therefore, the pre-amendment regulations are applicable to her claim.  *See Baden-Winterwood v. Life Time Fitness*, 566 F.3d 618, 629 (6th Cir. 2009) (amended Department of Labor regulations are not retroactive).  Under the previous regulations, the "short test" for the exemption provided that employees who earned more than

_____

[3] The Sixth Circuit has said that the Secretary of Labor's regulations provided "detailed guidance" for interpreting the terms "management" and "primary duty." *Speedway SuperAmerica*, 506 F.3d at 503.  The *Speedway* Court even considered the 2003 regulations which govern here. *Id.*

$250.00 per week in salary may qualify.  *See* 29 C.F.R. § 541(a)-(e) (2003).  Plaintiff was paid

nearly triple the amount required by the short test.  Also, to be exempt under the short test, the

employee must be one: (a) who regularly directed the work of two or more other employees; and

(b) whose primary duty consisted of the management of a recognized subdivision of an enterprise.

*See* 29 C.F.R. §541.1(f) (2003).  It is undisputed that Plaintiff regularly directed the work of two

or more other employees.  The only issue in dispute is whether Plaintiff's primary duty as a Store

Manager for Dollar General was "management."

The Department of Labor has identified factors that should be considered when

determining an employee's primary duty: (1) the amount of time spent in the performance of

managerial duties; (2) the relative importance of the managerial duties as compared with other

types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the

employee's relative freedom from supervision; and (5) the relationship between the employee's

salary and the wages paid other employees for nonexempt work performed.  29 C.F.R. § 541.103

(2003).

The Court will consider each of the aforementioned factors to determine Plaintiff's

primary duty and whether Defendant has sufficiently proven that the executive exemption applies.


### a.    Amount of Time Spent on Managerial Duties

Plaintiff contends that because she spent 85% of her time performing manual-labor duties

then her primary duty was performing manual labor, not management.  However, Defendant

counters that the percent of time spent on management functions is ambiguous.  The FLSA

regulations recognize concurrent duties.  *See* 29 C.F.R. § 541.106 (2003) ("An exempt employee

can also simultaneously direct the work of other employees and stock shelves"); *see also* 29

C.F.R. § 541.700(c) (2005) ("assistant managers in a retail establishment who perform exempt

executive work such as supervising and directing the work of other employees . . . may have

management as their primary duty even if the assistant managers spend more than 50 percent of

the time performing nonexempt work such as running the cash register").

　　　Plaintiff asserts that how an employee spends their working time is a question of fact,

citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) ("The question of how the

respondents spent their working time. . . is a question of fact."); *see also Nielsen v. DeVry, Inc.*,

302 F. Supp.2d 747, 752 (W.D. Mich. 2003) ("the question of how an employee spends his time

is a question of fact, while the question of whether his activities fall within an exemption is a

question of law").  Defendant, however, asserts that it does not dispute how Plaintiff spent her

working time, for purposes of this Motion.  Thus, the facts are not in dispute, just the legal

questions to be drawn–whether the executive exemption applies.

　　　Defendant asserts and the Court agrees that retail managers, like Plaintiff, are multi-

taskers with concurrent responsibility for supervision of employees and the store, and also

performing hands-on work alongside hourly workers.  Cavins herself admits that her job required

her to multi-task and to routinely perform management functions simultaneously with non-

management functions.  (Cavins Dep. at 147:1-12, 236:22-237:9).

　　　In *Leonard v. Dolgencorp, Inc.*, 2011 U.S. Dist. LEXIS 56623 (W.D. Ky. 2011), the

district court was faced with issues similar to those raised by Plaintiff Cavins.  Leonard claimed

that she spent about 70% of her time on manual labor or non-management issues.  Despite

Leonard's contentions, the court was persuaded by Dollar General's arguments that the store

could not function without one person taking responsibility for essential tasks, such as hiring clerks, managing and scheduling employees and accounting for receipts.  Accordingly, with respect to the first factor, the court held that:

> The Dollar General store could not effectively operate without Leonard functioning as the Store Manager. Her management duties are absolutely critical to day-to-day store operation. Without her, no one else had the ongoing responsibility to direct on-site actions.  Anyone can do the manual labor, but someone must be responsible for overall operations and that someone is not the District Manager.  Even though she may have performed non-managerial work a majority of the time, successful management of Leonard's store depended totally on her own decision-making and judgment.  Accordingly, the Court finds that the relative importance of Leonard's management responsibility exceeds those of her more time-consuming non-management activities.

*Leonard*, 2011 U.S. Dist. LEXIS at *17-18.

In the case at bar, Plaintiff Cavins asserts that she spent 85% of her time on manual labor or non-management issues.  Even construing this fact in Plaintiff's favor, the Court agrees with the *Leonard* court's analysis and findings.  Regardless of how much time is spent on manual labor, Plaintiff was still responsible for the overall operations of the store.  Plaintiff exercised daily discretion over many small matters.  Therefore, the importance of Plaintiff's management responsibility exceeds that of her more time-consuming non-management activities.

### b.    Managerial Duties Compared to Other Duties

Plaintiff contends that because she had to work in excess of 40 hours performing manual-labor duties, that those were the most important duties she performed.  However, the Sixth Circuit has held that where managerial duties include hiring employees, training employees "on rudimentary procedures such as operating the register," and "assigning the weekly work schedule," those duties are "much more important" to a store's success than are the non-managerial duties of "stocking merchandise, sweeping floors, and cleaning bathrooms."

*Speedway*, 506 F.3d at 505.

Plaintiff relies on *Plaunt v. Dolgencorp, Inc.*, 2010 U.S. Dist. LEXIS 132135 at *25 (M.D. Pa. Dec. 14, 2010), in asserting that her non-managerial duties were more important. The *Plaunt* court found a genuine issue of material fact existed over what an employer values more. The *Plaunt* court concluded that a reasonable jury could find that Dollar General valued the store manager's contribution of nonmanagerial work to the store because of the small amount of time she spent performing managerial work.

Defendant counters with multiple circuit court decisions where the executive exemption was applied despite the fact that the employee claimed to have spent the majority of his or her time on non-managerial tasks. *See, e.g. Baldwin v. Trailers Inns, Inc.*, 266 F.3d 1104, 1113-1116 (9th Cir. 2001) (exempt managers claimed they spent 90% of time on non-management tasks); *Murray v. Stuckey's, Inc.*, 939 F.2d 614, 617-20 (8th Cir. 1991) (convenience store managers were exempt despite spending 65% to 90% of time on non-management tasks); *In re Family Dollar FLSA Litig.*, 2011 U.S. App. LEXIS 5800, at *18 (4th Cir. Mar. 22, 2011) (store manager exempt despite testimony that she spent 99% of time on non-managerial duties). Additionally, a series of recent MDL opinions involving Family Dollar store managers have reached the same conclusion. *See also, Grace v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 89769, at *18 (W.D. N.C. Aug. 11, 2011) (granting summary judgment, in MDL action, against store manager claiming to have spent 90 to 95% of time unloading trucks, stocking shelves, cashiering and cleaning); *Grace v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 84386, at *18 (W. D. N.C. July 29, 2011) (granting summary judgment where store manager spent 85 to 90% of her time on these same duties).

The Court agrees with the reasoning in the aforementioned decisions.  As was discussed in the previous section, Plaintiff was the person in charge and exercised discretion daily.  Based on the reasoning in *Speedway*, regardless of whether she was cleaning the floors or training, she was always supervising and always in charge.  506 F.3d at 506-507.

The Department of Labor's regulations explicitly recognize Plaintiff's multi-tasking — performing management and nonexempt work simultaneously — as a managerial duty.  See 29 C.F.R. §541.106.  Finally, the Fourth Circuit held in *In re Family Dollar FLSA Litig.*, 2011 U.S. App. LEXIS at *18 that it is not a reasonable inference to conclude that the Family Dollar store was only managed 1% of the time where the manager claimed to have spent up to 99% of her time on manual labor.  The Court reasoned:

> Grace was in charge of a separate retail store, seeking to make it profitable. . . 100% of the time, even while doing those [non-managerial] jobs, she was also the person responsible for running the store. . . it cannot be rationally assumed, nor does the record support a claim, that the store went without management 99% of the time.  Grace also fails to acknowledge the importance of performing nonmanagerial tasks in a manner that could make the store profitable, the goal of her managerial responsibility.

Accordingly, the Court finds that regardless of whether Plaintiff was performing a non-managerial task, such as stocking the shelves or cleaning, she was still in charge and managing the store.  Plaintiff's managerial duties were therefore the most important and weigh in favor of applying the executive exemption.

### c.    Exercise of Discretionary Powers and Freedom from Supervision

Plaintiff asserts that she couldn't freely exercise discretion and was under heavy supervision by her district manager.  Plaintiff describes that her district manager supervised her and managed the store through in-store visits and at least five voicemails a day.  And the district

manager would visit the store and check to make sure that the merchandising and other things were done according to the way he wanted them done.  Further, Plaintiff asserts that Dollar General made many decisions at the corporate level, such as issuing the planogram, which showed employees where to place items, and the quantity of items to place on each shelf.  Plaintiff further describes that she was given detailed step-by-step instructions on how to respond in various situations, including how to handle an angry customer, how to answer the telephone while also running the cash register, what items to hang on a clipboard in the store's office, how to handle weather emergencies, and what steps employees must take to ensure a clean floor, such as reminding store employees to scrape gum off the floor.  (Cavins Dep. at 59:9-13; 94:7-11; 94:23-95:5; 131:17-20; 173:16-22; and 174:19-24).

Defendant Dollar General counters that even if they had as detailed and rigid operating procedures as Plaintiff describes, she was not told what to do in every circumstance.  She may have had to look something up in the Standard Operating Manual, but she also had to rely on her own judgment.  (Cavins Dep. at 129:16-130:12; 132:5-132:15).  Again, Plaintiff admits that she performed all the managerial duties in the Store Manager job description, and she used her own discretion and judgment to determine which tasks she should delegate.  (Cavins Dep. at 135:18-25; 141:8-25; 164:5-165:2).

Further, Plaintiff's District Manager rarely visited her store, once per month on average.  The District Manager "would just check to make sure [Cavins] had the merchandising and things done the way the voicemails and sales plan said they should be done," and then she would discuss with the District Manager solutions to merchandise space discrepancies between the plans and her store.  (Cavins Dep. at 93:17-95:5).  Even if the District Manager had a significant presence in the

17

store, the "active supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager." *Speedway*, 506 F.3d at 506-07; *see also, Mitchell v. Abercrombie & Fitch*, 428 F. Supp. 2d 725, 743 (S.D. Ohio 2006) (finding store manager exempt where "day-to-day authority" was not undermined by the fact that "District Managers regularly visited [plaintiff's] store and retained authority to override certain of his management decisions"), *aff'd by* 2007 U.S. App. LEXIS 7854 (6th Cir. 2007).

In *Speedway*, the plaintiff's district manager visited her store once or twice a week and communicated with the plaintiff frequently by telephone and e-mail. The plaintiff also testified that store managers "could pick up the phone and call [the district manager] 24 hours a day, seven days a week," and that the district manager remained constantly available to his store managers. 506 F.3d at 506. The Sixth Circuit in *Speedway* observed that simply because a Store Manager has a supervisor, does not mean she was not still "relatively free" from supervision. *Speedway*, 506 F.3d at 507.

Even if Plaintiff's District Manager monitored her performance with monthly visits and regular phone calls, she was still free from direct supervision for the majority of the time while working at her store. Plaintiff Cavins was the most senior employee on-site. Thus, on a day-to-day basis, Plaintiff exercised her discretion and operated the store without a supervisor monitoring her every move. A local store manager's job is not any less managerial for FLSA purposes simply because she has an active district manager. *See Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir. 1991). Accordingly, Plaintiff's exercise of discretion and relative freedom from supervision support a finding that her primary duty was management.

### d.    Plaintiff's Salary and Wages Paid to Other Employees

Plaintiff argues that considering the number of hours she worked, her earnings were similar to the hourly assistant store manager.  Plaintiff Cavins was paid a weekly salary of $700. She asserts that she regularly worked 65 hours a week, which is effectively an hourly rate of $10.77.  The Assistant Store Manager was paid $7.00 an hour.  Plaintiff therefore argues that "despite having to work at least 25 hours a week more than the assistant store manager, [she] only earned a few dollars and some change more per hour, which a reasonable jury could conclude is not substantially more."  (Pl.'s Response at 18).

Plaintiff again relies on the *Plaunt* decision in urging the Court to consider the extra hours worked.  Plaintiff argues that "otherwise, courts would frustrate the purpose of the inquiry–to determine whether an employer attached an overtime exemption to an employee who performs the same work as hourly employees in order to subvert the FLSA."  (Pl.'s Response at 16, citing *Plaunt*, 2010 U.S. Dist. LEXIS 132135, at *40).

Defendant argues that Plaintiff earned substantially more in salary than her non-exempt subordinates and that she was eligible for bonuses and assistant store managers could only earn up to 30% of the store manager's bonus.  Defendant reasons that "the only reasonable inference is that a Store Manager's management of others and accountability for a store's overall operations were the reasons for substantially higher pay."  (Def.'s Mot. at 26).  Further, Defendant argues that Plaintiff was a "profit center," meaning that she "had the ability to influence the amount of her compensation."  *See In re Family Dollar*, 2011 U.S. App. LEXIS at 5800, *25.  There, the court found that the manager influenced the store's profits–which directly affected her compensation–by her functioning as a team leader, motivating employees to be proud of the store;

19

ensuring that the store looked good, and generally that the store team did a good job.  *Id.* at 25-
26.  Defendant argues that Plaintiff Cavins was also a profit center because her evaluation and
bonus criteria were directly dependent on her store's success and profitability.

There is no question that when calculating Plaintiff's salary at an hourly rate that the pay
comparison between Plaintiff as Store Manager and her Assistant Store Manager is more even.
However, Plaintiff's hours reflect her greater responsibility and provide her the opportunity to
earn more.  Plaintiff's compensation of her salary and the substantial bonus opportunity reflects
her central role in the store and as a profit center.  All of Plaintiff's discretion, authority and
leadership she exercised contributed to the store's performance, on which her compensation was
based.

In *Speedway*, the Sixth Circuit considered the conversion of the store manager's salary of
$522 per week, based on 50 hours worked per week, to a hourly rate of $10.44.  Comparing this
hourly rate to $7.00 an hour for the subordinate employees, the Court concluded that "Thomas's
salary equated to a significant amount - - approximately thirty percent - - more than the hourly
wages paid to other employees for the kind of nonexempt work performed by her." *Speedway*,
506 F.3d at 509.

Therefore, in the case at bar, the evidence establishes that Defendant Dollar General paid
Plaintiff Cavins a significant amount more than its non-exempt employees.  This is strong evidence
that Plaintiff's primary duty was management.

In conclusion, each of the aforementioned factors show that Plaintiff's primary duty as the
Store Manager for Dollar General was management as it is defined by the FLSA for the purpose
of determining the applicability of the "executive exemption" of the FLSA.  Therefore, Defendant

has met its burden of establishing as a matter of law that Plaintiff is exempt from overtime under the executive exemption of the FLSA.

### IV.  CONCLUSION

For all of the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Strike and **GRANTS** Defendant's Motion for Summary Judgment.

The Clerk shall remove Documents 33 and 48 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

         */s/ George C. Smith*_____
         **GEORGE C. SMITH, JUDGE**
         **UNITED STATES DISTRICT COURT**